## GALLACHER v. FOUBERT.

No. 5443. Decided December 5, 1934. (38 P. [2d] 297.)

*Irvine, Skeen & Thurman,* of Salt Lake City, for appellant.

*O. W. Carlson,* of Salt Lake City, for respondent.

ELIAS HANSEN, Justice.

Defendant appeals from a judgment rendered against him in favor of the plaintiff in the sum of $9,018 and costs. The sole ground of complaint on this appeal is that the court below misconstrued the written contract which formed the basis of plaintiff's action. For about six years prior to the execution of the contract here involved, plaintiff and defendant had been copartners engaged in the business of collecting for consignees in Utah such moneys as they were compelled to pay railroad companies for freight in excess of what they deemed a reasonable rate. Plaintiff and defendant did business under the firm name of the Merchants' & Manufacturers' Traffic Bureau. The profits derived from the business were divided share and share alike between the copartners. In December, 1925, the copartners concluded that they were not making sufficient money to justify both of them to devote their time to the business in which they were engaged. Plaintiff secured employment elsewhere. Defendant continued to conduct the business. Under date of April 26, 1926, plaintiff and defendant entered into the contract here in question. Such contract contains, among others, the following provisions:

"That said partnership shall be dissolved and terminated as of the 17th day of December, 1925, subject however, to the terms and conditions hereinafter set forth.

"That second party shall complete with reasonable diligence and in good faith the collection and enforcement of all straight overcharge claims now with the parties as partnership business and shall do so without expense to the first party and shall make prompt remittance to first party of fifty per cent of the proceeds resulting from the collection and enforcement of said claims.

"That second party must diligently and in good faith carry and prosecute that certain cantaloupe refrigeration case known on Interstate Commerce Docket as No. 17361 to a reasonably satisfactory conclusion and second party shall remit to first party thirty per cent of the proceeds resulting from said refrigeration case; it being understood that first party shall not in any way pay, or be responsible for the payment of, any expense that is or may be incurred in the prosecution and collection of said cantaloupe refrigeration case.

"That second party must diligently and in good faith carry and prosecute all other reparation claims filed with the partnership and constituting a part of the partnership business to a reasonably satisfactory conclusion and second party shall remit to first party forty-six and one-half per cent of the proceeds resulting from said reparation claims; it being understood that second party shall bear and pay all expense incurred in the prosecution and collection of said reparation claims, provided, however, that out of any proceeds received from the Campton Commercial Company claim, 15% of the net may be paid to one Magnon, and in the event it is necessary to prosecute this claim at Ely, Nevada, then the first party agrees to accept instead of the amount herein otherwise specified, 30% of the recovery on such claim, and on the Barrett & Company recharge claim, there may be paid to one Anderson as his share of the recovery, $100.00 out of the net proceeds from such claim and from the proceeds of the Kennedy L. & D. Claim there may be paid, if necessary, to file suit, a reasonable attorney's fee.

"That second party shall promptly remit and pay to first party forty-six and one-half per cent of whatever becomes due and is paid on account of the interest of said partnership in a certain fruit and vegetable claim respecting shipping from California points to Utah Common points, which claim is now being prosecuted jointly by the Merchants and Manufacturing Traffic and the Traffic Service Bureau.

"That attached hereto is a list of the various estimated claims and accounts which are to be prosecuted and collected if reasonably possible, under the terms of this agreement.

"That the first party shall at all reasonable times have access to the books and records of said partnership and the books and records maintained by second party in the completion of said partnership business as herein required; it being understood that second party shall keep a correct account and record of all business of said partnership that is to be transacted and completed as in this contract provided."

Attached to the contract is "a list of various estimated claims," nineteen in number, among them one designated as the "Big Fruit case, California to Utah $200,000.00." The

only controversy between the parties to this action is with respect to the so-called Big Fruit Case or claim. A brief summary of the evidence touching that case or claim is necessary to a clear understanding of what divides the parties to this litigation. Concerning that case or claim the evidence without conflict shows: That during the time plaintiff and defendant were conducting their copartnership business the Traffic Service Bureau of Utah was engaged in a business similar to that of the parties to this controversy. Each of the bureaus conceived the idea that the rate of $1.44 per hundred pounds for fruit transported by rail from California to Utah was too high; that if proceedings were instituted before the Interstate Commerce Commission of the United States, such rate could be substantially reduced and a part of the freight rate theretofore paid for fruit shipped from California to Utah could be recovered by the consignees who had been compelled to pay what was deemed an excessive rate. Each bureau made arrangements with a number of Utah consignees who were and had been receiving fruit shipments from California whereby proceedings were to be brought before the Interstate Commerce Commission to secure a reduction of the freight rate and also to recover excessive freight paid. Freight bills were collected by each bureau from its clients in preparation for the commencement of the proceedings. Before any proceeding was commenced, the two bureaus entered into an agreement whereby they agreed to jointly prosecute the contemplated proceedings before the Interstate Commerce Commission. The agreement fixed the proportion each bureau should receive out of any money they should be paid for services rendered in the prosecution of the proceedings, before the commission. It was anticipated that H. W. Prickett, general manager and traffic counsel for the Traffic Bureau, would perform most of the work incident to prosecuting the action and therefore he was, by the agreement, to be allowed a reasonable compensation for the extra work so performed. On or about October 10, 1924, the two bureaus jointly filed a complaint with the Interstate Commerce Commission against various railroad

companies which were and had been carriers of fruit from California to Utah. Part of the relief prayed for in the complaint was "that said defendants also pay to complainants reparation to basis of rates found reasonable by the Commission in this proceeding on all shipments of apples, etc., received by complainants over the lines of said defendants from points in California during the period extending from two years prior to the date of the filing of this complaint to the date of the Commission's disposition of the complaint herein."

Hearings were had and evidence adduced before the Interstate Commerce Commission in February, 1925. At that hearing the defendant and H. W. Prickett appeared for the plaintiffs. Later briefs were prepared and filed and Mr. Prickett went to Washington, D. C., and orally argued the case before the commission. On March 6, 1929, the commission made an order effective May 31, 1929, establishing $1.05 per hundred pounds as the rate to be charged on fresh fruit transported by rail from California to Utah. It is made to appear that under the practice prevailing before the Interstate Commerce Commission that after a rate is fixed the parties claiming reparation must prepare and file in the cause what is known as a rule-5 statement. Such a statement consists of a list of the freight bills which have been paid at a rate in excess of that fixed as the reasonable rate by the commission. After the rule-5 statement had been filed in the cause and the amount of reparation if any, computed, the commission makes its order fixing the amount that shall be refunded. It is also made to appear that the commission may, if it be so advised, order a refund on all freight bills paid at any time between two years prior to the commencement of the proceeding and the final disposition of the cause. In the final disposition of the "Big Fruit Case" the commission ordered a refund on all freight paid after the proceeding was commenced. It refused to order any refund of the freight paid before the complaint was filed. It will be observed that the rate was reduced from $1.44 to $1.05 per hundred pounds, hence the refund ordered was 39 cents

per hundred pounds on the freight bills paid after the complaint was filed. The Big Fruit Case was finally disposed of that is the order of reparation in that case was made on July 7, 1930. After the order of reparation was made by the commission some further proceedings were had in the federal court at San Francisco, Cal., before the amount ordered refunded was paid.

Under the arrangements had between the consignees and the bureaus, the latter were to receive for their services a percentage of any money recovered as reparation. One consignee agreed to pay 30 per cent of the amount recovered, the others 50 per cent. The cost and expenses of the litigation were paid, including $5,000 to W. H. Prickett because of the extra work performed by him in prosecuting the proceedings before the commission. There is no dispute between the two bureaus or between the bureaus and the various consignees as to what each should receive out of the moneys recovered as reparation.

The sole question raised by the pleadings and evidence in this action is concerning the division between plaintiff and defendant of the money received by the Merchants' & Manufacturers' Traffic Bureau. Plaintiff contends that he is entitled to participate to the extent of 46½ per cent in all money that was paid to the Merchants' & Manufacturers' Traffic Bureau for its services rendered in the "Big Fruit Case." Defendant concedes that plaintiff is entitled to participate to the extent of 46½ per cent in all moneys received by the bureau on freight bills dated on or before December 17, 1925, but contends that plaintiff is not entitled to receive any part of the money collected as reparation on freight bills dated after the partnership between him and plaintiff was dissolved by the written agreement between them. Upon that issue the court below found for the plaintiff and entered judgment accordingly. It is to reverse such finding and judgment that defendant has prosecuted this appeal.

At the trial of this cause oral evidence was offered and received as to what was said by the parties prior to and at

the time the written contract was executed dissolving the partnership between plaintiff and defendant. Apparently such evidence was offered and received on the theory that there was an ambiguity in the written contract as to the intention of the parties thereto. While both parties here contend that the written contract dissolving the partnership is not, when properly construed, ambiguous, yet neither complains because the trial court admitted oral evidence touching the intention of the parties. Moreover, in the oral arguments and printed briefs filed, each party relies upon the oral evidence in support of his claim. The oral evidence is in direct conflict. Plaintiff's evidence tends to show that it was understood that he should participate in all moneys recovered in the Big Fruit Case on all freight bills without regard to the date of the freight bills or when they were filed with the bureaus. Defendant's evidence tends to show that it was understood that plaintiff was not to participate in moneys collected on freight bills dated after the partnership was dissolved. It would serve no useful purpose to prolong this opinion by a detailed statement of the oral evidence touching that issue. Suffice it to say that after a careful review of such evidence we have reached the conclusion that if this cause were to be ruled on the oral evidence alone, we would not be justified in disturbing the findings of the trial court as to the intention of the parties to this proceeding with respect to the division of the money which was paid to the Merchants' & Manufacturers' Traffic Bureau for services rendered in the Big Fruit Case.

It is earnestly urged by defendant that the written contract here to be construed deals only with claims; that each freight bill constitutes a claim; that the copartnership which existed between plaintiff and defendant did not have any interest in freight bills dated after December 17, 1925, because such freight bills were not in existence, and hence could not be claims when the copartnership was dissolved. For such reason it is contended that the contract dissolving the copartnership does not entitle plaintiff to participate in any reparation in freight bills which were dated after

December 17, 1925. There would be more merit to defendant's contention in such respect were it not for the fact that the contract of dissolution refers to the Big Fruit Claim and the Big Fruit Case as apparently meaning the same thing. It was necessary to prosecute the Big Fruit Case to a successful conclusion in the matter of securing a reduction of the freight rate before anything could be realized on any of the freight bills. The dissolution contract expressly provides that it was the duty of the defendant to diligently and in good faith prosecute that case. So far as is made to appear, the amount of work required to prosecute that case to the point where a reduction of freight rate was ordered is in no way affected by the number or date of freight bills that might later be filed with the commission as a basis for fixing the amount of reparation to be awarded. The proceedings before the commission were conducted as one cause. Defendant made no attempt to segregate the costs incidental to collecting the reparation on freight bills dated before December 17, 1925, and those dated thereafter, although at the trial he conceded that plaintiff should not be compelled to pay any of the costs which were incurred with respect to the freight bills dated after the partnership was dissolved. Defendant continued to collect freight bills after the partnership was dissolved, but apparently such freight bills were collected pursuant to the agreement entered into between consignees of fruit and the Merchants' & Manufacturers' Traffic Bureau while plaintiff was a member of the copartnership. Plaintiff as a member of the copartnership had an interest in the contracts between the bureau and its clients, not only in freight bills in existence when the partnership was dissolved, but also in freight bills thereafter to be collected pursuant to the contract between the bureau and its clients. There is no language in the written contract under review which indicates that plaintiff relinquished to the defendant his right to participate in any and all reparations that might be secured on freight bills dated and collected after he ceased to be a partner with defendant. It follows that plaintiff still retained such right.

The judgment of the lower court is affirmed. Respondent is awarded his costs.

STRAUP, C. J., and FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.